Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6790 | **DATE** | 6/30/2003 |
| **CASE TITLE** | United States of America vs. Arthur Andersen, LLP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Petitioner's March 17, 2003 motion to compel compliance with agreed order [34-1] is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 2 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 71 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 03 JUL -1 PM 4:51 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
JUL 2 2003

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 02 C 6790 |
| v. | ) | |
| | ) | |
| ARTHUR ANDERSEN, L.L.P., | ) | Judge Ruben Castillo |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America ("Petitioner") petitioned this Court to enforce nineteen summonses issued by the Internal Revenue Service ("IRS") to Arthur Andersen, L.L.P. ("Andersen"). Subsequently, we entered an agreed production order outlining the terms of Andersen's compliance with the summonses. Currently before this Court is Petitioner's March 17, 2003 motion to compel compliance with Paragraph 2(B) of the agreed production order as well as the matter of whether Intervenors Does and Poes may assert an identity privilege under 26 U.S.C. §7525. For the reasons set forth below, Petitioner's motion to compel compliance with Paragraph 2(B) is denied as to the Poes and the Does because we believe they may properly assert an identity privilege in this case. (R. 34-1.)

## RELEVANT FACTS

In April 2002 the IRS issued nineteen summonses to Andersen as part of its investigation into Andersen's compliance with Internal Revenue Code regulations governing potentially abusive tax shelters. (R. 30, Pet'r's Resp. at 1.) Under the applicable regulations, the marketer of a potentially abusive tax shelter is required, *inter alia*, to maintain a log listing the identities of individual investors in that shelter as well as certain details about their transactions; the

1

71

summonses requested the log information required under the IRS regulations, as well as the production of various documents underlying the potentially abusive transactions. (R. 2, IRS Summonses, Ex. 1.) On September 23, 2002, Petitioner filed a petition to enforce the IRS summonses on Andersen, and on November 19, 2002, this Court entered an agreed order outlining how and when Andersen was to produce the requested information. (R. 28, Doe Br. at 2.)

In January 2003 Andersen sent letters to investors in the relevant tax shelters informing them of the nature of the IRS summonses and the agreed order. *Id.* After receiving this communication from Andersen, two independent groups of investors, the Does and the Poes, petitioned the Court to intervene in this enforcement action in order to assert a privilege under 26 U.S.C. §7525. (R. 28, Does' Br. at 2-3; R. 32, Poes' Br. at 2.) We granted the Does' January 27, 2003 motion to intervene, but requested that the parties brief whether or not the Does could intervene under fictitious names as well as whether they could properly invoke the 26 U.S.C. §7525 privilege. (R. 32, Does' Br. at 1.) In addition, we required any additional investors in the tax shelters at issue to assert a privilege by February 12, 2003. *Id.* Subsequently, the Poes filed their motion intervene on February 12, 2003, which we granted on June 20, 2003. In light of the Seventh Circuit's remand for fact-finding in a similar IRS enforcement action addressing the same identity privilege issue, *see United States v. BDO Seidman*, No. 02-3914, 02-3915 (7th Cir. 2002), we ordered the Intervenors to produce to this Court for *in camera* inspection documents that the Intervenors believed supported their claim of an identity privilege under §7525. This Court has since reviewed these documents in light of the relevant inquiries identified by the Seventh Circuit in remanding the *BDO Seidman* case, and is now in a position to rule on whether

the Intervenors may assert this privilege as well as the IRS's March 17, 2003 motion to compel compliance with this Court's agreed order.

## ANALYSIS

### I. Identity Privilege Under §7525

Under §7525, "with respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner." 26 U.S.C. §7525(a)(1).[1] A claim of attorney-client privilege is recognized under the common law where: (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications are made in confidence and (4) relate to that purpose, and (5) are made or received by the client. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (citations omitted). Thus, applying these principles to the privilege under §7525, a client seeking tax advice must obtain that advice from a tax professional acting as such, and in a manner indicating that those communications will be kept in confidence. Confidentiality in the tax context may be waived when the communications with the tax adviser ultimately are used to prepare the client's tax returns, a non-confidential document. *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) (stating "if the client transmitted the information so that it might be used on the tax return, such a transmission destroys any expectation of confidentiality," but noting that where tax preparer was also client's lawyer, "it cannot be assumed that everything transmitted to him by the taxpayer was intended to assist him in his tax-preparation function . . . , rather than in his legal-representation function.").

---

[1] This privilege does not extend, however, to "any written communication between a federally authorized tax practitioner and a director, shareholder, officer or employee, agent, or representative of a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter." 26 U.S.C. §7525(b).

3

The Does and Poes in the instant motion seek to protect only their identities as privileged under §7525.[2] As noted in a similar case in this district, a client's identity is not generally considered a privileged communication under attorney-client privilege. *United States v. BDO Seidman, LLP*, No. 02 C 4822, 2003 WL 932365, at *1 (N.D. Ill. Feb. 5, 2003). The court noted, however, that "an exception to this general rule exists . . . where the disclosure of the client's identity would lead ultimately to disclosure of the client's motive for seeking the advice . . . because motivation is itself a confidential communication." *Id.* (internal quotations omitted).

The principles underlying the §7525 and attorney-client privileges governed the Seventh Circuit's inquiries on remand in the *BDO Seidman* case. Specifically, the Seventh Circuit requested that the district court make factual findings on four topics, which the district court framed as the following questions: (1) was the purpose of BDO's representation to provide tax advice; (2) would revealing the appellant's identities reveal their motives for seeking tax advice; (3) have the clients waived the privilege; and (4) were the documents at issue communicated or generated for the purpose of preparing the client's tax returns. *See BDO Seidman*, 2003 WL 932365, at *2. We examined the Does and Poes' documents with these inquiries in mind, as well as two questions of our own. We added to our analysis the question whether the corporate exception of §7525(b) applied to either Intervenor, as well as whether the Transactions at issue occurred after the effective date of the privilege, which in this case is July 1998. Thus, this six-

---

[2] The Intervenors emphasize that they may wish to assert various privileges relating to the documents themselves in future motions to compel. (R. 53, Does' Br. re Privilege at 2.) In this order we address only the IRS's motion to compel compliance with Paragraph 2(B) of the agreed order, which requests "[a] list (including name, address and taxpayer identification number) by year or range of years, of investors that engaged in the Identified Transactions not previously disclosed in response to [other paragraphs]," (R. 12, Agreed Order), and thus any future claims of privilege relating to the documents themselves are preserved.

4

pronged inquiry, when applied to the documents submitted by the Does and the Poes, should answer the question of whether they may assert an identity privilege.

In holding that, under certain circumstances, the identities of investors in potentially abusive tax shelters are covered by the confidentiality privilege conferred by §7525, the district court in *BDO Seidman* relied primarily on two Seventh Circuit decisions dealing with identity in the context of attorney-client privilege.[3] *Id.* In the more recent decision, the Seventh Circuit held that a client's identity is privileged when "its disclosure would be tantamount to revealing the premise of a confidential communication: the very substantive reason that the client sought legal advice in the first place." *In re Grand Jury Proceeding (Cherney)*, 898 F.2d 565, 568 (7th Cir. 1990). Similarly, in an earlier decision the Seventh Circuit noted "there may be circumstances under which the identification of a client may amount to the prejudicial disclosure of a confidential communication, as where the substance of a disclosure has already been revealed but not its source." *Tillotson v. Boughner*, 350 F.2d 663, 666 (7th Cir. 1965).

Both *Cherney* and *Tillotson* are cases where an attorney refused to disclose his client's identity on the grounds that such disclosure violated the attorney-client privilege and might implicate the client in past criminal conduct. *Cherney*, 898 F.2d at 566; *Tillotson*, 350 F.2d at 664. Petitioner argues that for this reason these cases are distinguishable from the present one, as both cases involved clients seeking advice concerning past criminal conduct rather than advice on future tax planning. In support of this assertion, Petitioner cites the *Cherney* court's conclusion limiting its ruling to the "special circumstances of this case." *Cherney*, 898 F.2d at 569. The IRS's analysis of *Cherney* is unconvincing. Nothing in the opinion equates the

---

[3] In addition, the court noted "if such a privilege did not apply to §7525 in the abstract, the Seventh Circuit would not have remanded" with instructions that the court make specific findings with regard to each document in question as to whether or not the identities of the individual investors were privileged. *BDO Seidman*, 2003 WL 932365, at *2.

5

"special circumstances" of the *Cherney* case with past criminal conduct; indeed, immediately prior to noting the "special circumstances" of the case the court found that "disclosure of the [client's] identity would convey the substance of a confidential communication." *Id.* The most straightforward interpretation of this language is the one that this Court will adopt—namely, that where circumstances are such that revealing a client's identity perforce reveals a confidential communication, that identity is privileged. Thus, if the documents submitted by the Does and Poes in this case satisfy the aforementioned six-pronged inquiry, they are entitled to assert an identity privilege under §7525.

After a thorough review of the documents we believe that both the Does and the Poes may assert an identity privilege. As an initial matter, both the Does and the Poes' Transactions occurred after the effective date of the privilege. Further, it is abundantly clear from our review of the documents that Andersen's role was to provide tax advice to the Does and Poes with respect to their particular transactions. Turning to the question whether revealing the clients' identities would reveal their motives for seeking tax advice, we believe that the documents support the Intervenors' position that it would. The IRS is seeking information, including the identities of the Poes and the Does, in an effort to determine whether or not Andersen was complying with the IRS regulations governing potentially abusive tax shelters. (R. 30, Pet'r's Resp. at 1.) Under these circumstances, it is difficult to see how revealing the identities of the Poes and the Does could amount to anything less than a revelation of their motivations in seeking Andersen's tax advice—to invest in potentially abusive tax shelters. This motivation, the "very substantive reason that the client sought . . . advice in the first place," is confidential and therefore privileged under §7525. *Cherney*, 898 F.2d at 568. Finally, it does not appear that the clients waived the privilege. The Does aver that their documents "were not transmitted or

created in connection with, or for the purpose of, the preparation of tax returns for any of the Does." (R. 53, Does' Br. re Privilege, Ex. E., Doe. Aff. at ¶ 9.) There is no other indication in the documents before us that this tax advice was created for the purpose of filing tax returns or any other public purpose.[4] Our review of the documents satisfies us that the revelation of the Does' and Poes' identities would likewise reveal their motives and that all of the other requirements for asserting the privilege are satisfied. Thus, we hold that the Intervenors may assert an identity privilege under §7525.

## II. Petitioner's Proposed Exceptions to §7525 Privilege

Petitioner contends that, even if the identities of the Does and the Poes are protected under §7525, their privilege is superseded by the disclosure requirements of I.R.C. §6112, a statute enacted prior to §7525. The regulations promulgated under the statute require that promoters of potentially abusive tax shelters maintain logs listing the investors in these shelters as well as details of their transactions. Treas. Reg. §301.6112-1(a). Petitioner argues that to

---

[4] We reject Petitioner's over-broad argument that the §7525 privilege should not apply in the event that Andersen prepared tax returns for either the Poes and Does, noting that the privilege only extends to communications concerning tax advice, and does not extend to communications made for the purposes of tax preparation. "The information that a person furnishes the preparer of his tax return is furnished for the purpose of enabling the preparation of the return, not the preparation of a brief or an opinion letter. Such information therefore is not privileged." *United States v. Frederick*, 183 F.3d 496, 500 (7th Cir. 1999). Petitioner correctly notes that the privilege will only be upheld when advice is sought "from a professional legal adviser in his capacity as such," and that the burden of proof rests upon the individual asserting privilege. *United States v. Evans*, 113 F.3d 1456, 1461 (7th Cir. 1997). However, in the current matter it is Petitioner itself that has fixed Andersen's capacity as tax advisor and not as tax preparer. Petitioner is seeking to obtain documents relating to Andersen's activities as a promoter of tax shelters, an activity that necessarily involves dispensing tax advice to potential investors. While it is certainly true that the Does' and the Poes' tax returns were likely impacted by the advice that they received, whether and how Andersen prepared those returns is irrelevant for the purposes of Petitioner's investigation and has no bearing on their motivations in seeking Andersen's advice on the tax shelters. Given this fact, and the very nature of Petitioner's investigation, we cannot say that the Does and the Poes have failed to meet their burden; in fact, Petitioner has met it for them.

7

allow investors in potentially abusive tax shelters to assert identity privilege under §7525 would gut §6112 of any meaning, a result Congress could never have intended. However, Petitioner fails to account for the fact that the Treasury Regulations specifically address the interaction of §7525 and §6112, providing that "in any case in which an organizer or a seller of a potentially abusive tax shelter believes that information required to be maintained as part of the list for that tax shelter . . . constitutes confidential tax advice protected under Section 7525(a), such information may be withheld from the Service . . ." Treas. Reg. § 301.6112-IT Q&A-17(b)(2000). Given such clear instruction, we find it impossible to adopt Petitioner's reasoning.

Finally, Petitioner urges the Court to apply the crime-fraud exception to attorney-client privilege on the grounds that the advice was given in furtherance of civil tax fraud. In order for the crime-fraud exception to apply, "there must be something to give colour to the charge; there must be prima facie evidence that it has some foundation in fact. When that evidence is supplied, the seal of secrecy is broken." *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993) (internal quotations and citations omitted). Petitioner acknowledges that, under the current circumstances, it would be difficult for this Court to find sufficient evidence supporting fraudulent conduct on the part of the Does and Poes. However, Petitioner contends that Andersen's purported failure to register potentially abusive tax shelters is sufficient to support an inference that the Does and Poes sought Andersen's advice for the purposes of perpetrating civil tax fraud. This is at best bootstrapping; Petitioner in effect is asking the Court to assume that its incomplete investigation of Andersen will prove fraud, and to use this assumption as the grounds for enforcing Petitioner's summonses in its efforts to make its case, even to the point of abrogating privilege. Even if we were inclined to do this, however, Petitioner has not supplied us with a link between Andersen's purportedly fraudulent conduct and that of the Does and Poes.

Accordingly, we decline to abrogate the Does' and Poes' §7525 privilege on the grounds of the crime-fraud exception.

### III. Intervention under Fictitious Names

This Court has not found any Seventh Circuit authority directly addressing the issue of whether and when intervenors may use fictitious names. However, the Seventh Circuit's order remanding *BDO Seidman* implicitly suggests its willingness to accept this type of intervention in circumstances where the intervenors assert privileged identity. Because we can find no Seventh Circuit authority supporting the opposite conclusion, and since logic argues against recognizing identity privilege only to remove an important method for protecting it, we will allow the Does and the Poes to continue their use of fictitious names in the current proceedings. We stress, however, that this decision is limited in scope, and does not extend beyond the Seventh Circuit's implicit recognition of anonymous intervention for individuals asserting that their identities are privileged under §7525. Thus, the remaining intervenors in this case who have not asserted an indentity privilege may not proceed under a pseudonym.

### CONCLUSION

For the reasons stated above, both the Poes and the Does may continue to use fictitious names in the proceedings. Petitioner's motion to compel is also denied to the extent that it seeks information relating to the Does and Poes' identity, which we hold is privileged under §7525. (R. 34-1.) Any information related to their identities, including but not limited to their names and taxpayer identification numbers, is to be redacted by Andersen prior to complying with Petitioner's summonses.

ENTERED: _____
Judge Ruben Castillo
United States District Court

**Dated: June 30, 2003**